Robert **WARE**, Jr., Petitioner,

v.

**UNITED STATES of America,**
**Respondent.**

No. 3:00–0262.

United States District Court,
M.D. Tennessee,
Nashville Division.

Dec. 8, 2000.

---

Robert Ware, Memphis, TN, Pro se.

Michael L. Roden, Mercedes C. Maynor–Faulcon, Office of the United States Attorney, Nashville, for Respondent.

## *MEMORANDUM*

WISEMAN, Senior District Judge.

Petitioner Robert Ware, Jr., seeks review of his sentence under 28 U.S.C. § 2255. For the reasons set forth below, his petition is denied.

### I.

On March 7, 1997, a jury convicted Petitioner Robert Ware, Jr., for three drug offenses. This Court sentenced him to 360 months in prison. The Court of Appeals for the Sixth Circuit affirmed his conviction on December 3, 1998. The Supreme Court denied certiorari on March 29, 1999.

On March 27, 2000, Ware filed a petition under 28 U.S.C. § 2255, seeking review of his sentence. The Court later permitted him to file an amended petition. He asserts, pursuant to the rule announced in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that the Government should have specified the amount of drugs in each count charged in the indictment and that the Court should have submitted the issue of the weight of

the drugs to the jury for proof beyond a reasonable doubt.[1] He also asserts that the indictment violated the Double Jeopardy Clause, that his Base Offense Level was set according to an unconstitutional standard, and that he received ineffective assistance of counsel.

## II.

█ In *Apprendi*, the Supreme Court announced that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at —— ——, 120 S.Ct. at 2363–64. Courts are now recognizing that this rule changes how the weight of drugs must be treated in drug convictions. Courts can no longer treat the weight of the drugs as a sentencing factor that the trial judge can determine under a preponderance of the evidence standard. Instead, when the amount of drugs will increase the sentence beyond the maximum penalty that applies regardless of weight, the Government must charge the weight of the drugs in the indictment and must prove the weight of the drugs to a jury beyond a reasonable doubt. *See United States v. Aguayo–Delgado*, 220 F.3d 926 (8th Cir.2000); *United States v. Angle*, 230 F.3d 113 (4th Cir. 2000); *United States v. Doggett*, 230 F.3d 160 (5th Cir.2000).

Under *Apprendi*, it was error not to specify the weight of the drugs in Ware's indictment and not to allow a jury to determine the weight of the drugs beyond a reasonable doubt. However, the Supreme Court decided *Apprendi* on June 26, 2000, more than a year after Ware's case became final. Thus, the question is whether this Court should apply *Apprendi* retroactively to cases on collateral review.

In *Teague v. Lane*, the Supreme Court adopted a test for retroactivity that Justice Harlan had developed in a prior case: new constitutional rules of criminal procedure "should always be applied retroactively to cases on direct review, but ... generally ... should not be applied to criminal cases on collateral review." 489 U.S. 288, 303, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (citing *Mackey v. United States*, 401 U.S. 667, 675, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971)) (separate opinion of Harlan, J.). The Court announced two exceptions to this rule. First, a new rule should apply retroactively if it prevents the law-making authority from criminalizing certain kinds of individual conduct. *Id.* at 307, 109 S.Ct. 1060. Second, the rule should apply retroactively if it "requires the observance of the procedures 'implicit in the concept of ordered liberty.' " *Id.* (citations omitted). The Court has also described this exception as applying to "watershed rules fundamental to the integrity of the criminal proceeding." *Sawyer v. Smith*, 497 U.S. 227, 234, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990). Only the second exception is potentially applicable to this case.

█ To summarize, the rule in *Apprendi* will apply retroactively if it is not a "new" rule as defined by the Supreme Court. If it is a "new" rule, it still might apply retroactively if it is a substantive rule instead of a procedural rule: *Teague* only bars retroactive application of the latter. If it is both "new" and a rule of criminal procedure, it will apply retroactively only if it is a "watershed rule fundamental to the integrity of the criminal

1. Ware's petition alleges that his indictment was faulty in several ways. First, he argues that the Government constructively amended the indictment—which charged him with violations of 21 U.S.C. §§ 841(A) (drug offenses) and 846 (conspiracy)—to include violations of 21 U.S.C. § 841(b), which has traditionally been recognized to set forth the sentencing ranges for drug offenses and which was therefore not named in the indictment. Because the Government did not mention § 841(b) in the indictment, Ware asserts he was not put on notice of the alleged weight of the drugs and the possible penalty he could face if convicted. In other words, he was not aware of the specific crime with which he was charged. Ware also claims this defect rendered his counsel ineffective. All of these claims, however, stem from the decision in *Apprendi*.

proceeding" within the meaning of the second *Teague* exception.

### (A) Did Apprendi announce a "new" rule?

In *Teague*, the Court explained that "a case announces a new rule when it breaks new ground or imposes a new obligation on the States or Federal Government.... To put it differently, a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." 489 U.S. at 301, 109 S.Ct. 1060. This requirement ensures that gradual developments in the law ("new laws") will not be used to upset good-faith interpretations of precedent existing at the time of the conviction. *Sawyer*, 497 U.S. at 234, 110 S.Ct. 2822. It also recognizes that "the purpose of federal habeas corpus is to ensure that convictions comply with federal law in existence at the time the conviction became final, and not to provide for a mechanism for the continuing reexamination of final judgments based upon later emerging legal doctrines." *Id.*

■ To determine whether a rule is new, the court must assess the state of the law as it existed at the time the conviction became final and then determine whether the trial court should have felt compelled to adopt the rule at issue. *O'Dell v. Netherland*, 521 U.S. 151, 159, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997). If, in light of existing law, the trial court acted reasonably by not adopting the rule, the rule is "new" under *Teague*. *See id.* ("*Teague* asks state-court judges to judge reasonably, not presciently."); *see also Cain v. Redman*, 947 F.2d 817, 821 (6th Cir.1991) (a rule sought by federal habeas petition is "new" as long as the correctness of the rule is susceptible to debate among reasonable minds) (citing *Butler v. McKellar*, 494

U.S. 407, 110 S.Ct. 1212, 1217 (1990)). The most frequently cited pronouncement of a "new" rule is *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), which announced the right to counsel in all criminal trials for serious offenses.

■ The rule in *Apprendi* is "new" under *Teague*. To begin with, the sheer number of opinions in *Apprendi* indicates that existing law did not compel the rule announced therein. *O'Dell*, 521 U.S. at 159, 117 S.Ct. 1969 ("The array of views expressed in *Simmons* itself suggests the rule announced there was, in light of this court's precedent, 'susceptible to debate among reasonable minds.' "). Specifically, five justices joined in the opinion of the court, and two of those—Thomas and Scalia—issued concurring opinions, Thomas arguing for an even broader rule than that adopted by the majority. Four justices dissented in two opinions.

Although *Jones v. United States*, 526 U.S. 227, 243 n. 6, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), articulated the principle that any fact that increases the maximum penalty for a crime must be charged in the indictment and submitted to the jury—and in that sense can be said to prefigure *Apprendi*—the Supreme Court has clearly held that a rule can still be new even if a prior decision informs, controls, or governs the case that announces the rule. *Sawyer*, 497 U.S. at 236, 110 S.Ct. 2822; *see Michigan v. Payne*, 412 U.S. 47, 56 n. 12, 93 S.Ct. 1966, 36 L.Ed.2d 736 (1973). To prevent a rule from being considered "new," prior case law must actually compel the result, which was not the case here.[2] The Supreme Court noted in *Jones* that its "prior cases suggest rather than establish" the principle that any fact that increases the maximum penalty for a

---

2. For example, if a defendant's conviction became final now—post-*Apprendi*—and the defendant challenged his conviction on the basis that *Apprendi* requires drug weight to be submitted to the jury, the pronouncement that *Apprendi* requires such a result would not

constitute a "new" rule. Instead, it would be an application of a prior decision to a case on closely analogous facts; in other words, *Apprendi* would compel the result and the rule would not be new.

crime must be charged in an indictment, submitted to a jury, and proved beyond a reasonable doubt. 526 U.S. at 243 n. 6, 119 S.Ct. 1215. Also, before *Apprendi*, numerous courts had held that the amount of drugs was not an element of the offense to be submitted to the jury under 21 U.S.C. § 841, but instead was a sentencing factor under the statute's penalty provisions. *United States v. Cisneros*, 112 F.3d 1272 (5th Cir.1997); *United States v. Dorlouis*, 107 F.3d 248 (4th Cir.1997); *United States v. Silvers*, 84 F.3d 1317 (10th Cir.1996); *United States v. Moreno*, 899 F.2d 465 (6th Cir.1990); *United States v. Gibbs*, 813 F.2d 596 (3rd Cir.1987); *United States v. Wood*, 834 F.2d 1382 (8th Cir.1987). Furthermore, numerous courts continued to find that the quantity of drugs was a sentencing factor under 21 U.S.C. § 841 even in light of the *Jones* decision. *United States v. Hester*, 199 F.3d 1287, 1291–92 (11th Cir.2000); *United States v. Thomas*, 204 F.3d 381, 382 (2nd Cir.2000); *United States v. Jones*, 194 F.3d 1178, 1186 (10th Cir.1999); *United States v. Williams*, 194 F.3d 100, 106–7 (D.C.Cir.1999). The fact that so many courts have consistently followed a practice contrary to the rule announced in *Apprendi* serves as proof that the rule is new. *See Cain v. Redman*, 947 F.2d 817, 821 (6th Cir.1991) (pervasive use of a jury instruction that was contrary to what the Supreme Court eventually deemed a rule was evidence that the Supreme Court decision broke new ground and imposed new criteria for such instructions). Hence, though the statement in *Jones* anticipated or supported what became a rule in *Apprendi*, prior case law did not dictate the result reached therein.

Ultimately, at the time of Ware's conviction, it was reasonable for the amount of drugs not to be charged in the indictment or submitted to the jury. Thus, the rule in *Apprendi* is new.

**(B)** *Is the rule in Apprendi a rule of criminal procedure?*

■ *Teague* only bars retroactive application of new procedural rules.[3] Substantive rules, on the other hand, are presumptively applied retroactively. *Apprendi* constitutes a procedural rule because it dictates what fact-finding procedure must be employed to ensure a fair trial. *Teague*, 489 U.S. at 312, 109 S.Ct. 1060 (one of the principle functions of habeas corpus is "to assure that no man has been incarcerated under a procedure which creates an impermissibly large risk that the innocent will be convicted") (quoting *Desist v. United States*, 394 U.S. 244, 262, 89 S.Ct. 1048, 22 L.Ed.2d 248 (1969)). In *Apprendi*, the Supreme Court specifically noted that "[t]he substantive basis for New Jersey's enhancement . . . is not at issue; the adequacy of New Jersey's procedure is," 530 U.S. at ——, 120 S.Ct. at 2354.

The Supreme Court touched on the difference between substantive and procedural rules in *Bousley v. United States*, 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). In that case, the Supreme Court found the retroactivity doctrine inapplicable when it decides the meaning of a criminal statute enacted by Congress. The Supreme Court drew a distinction between decisions concerning procedural rules and decisions holding that a substantive federal criminal statute does not reach certain conduct. *Id.* at 620, 118 S.Ct. 1604. The distinction is based on the idea that a new interpretation of a substantive rule will place certain conduct beyond the reach of the criminal law and will therefore create a significant risk that defendants were unjustly convicted under the old interpretation for conduct that is not unlawful. *Id.* (citation omitted). Such new interpretations must be applied retroactively because a defendant suffers a fundamental wrong

---

**3.** Ware does not raise this issue. The Court, however, is aware of at least one other § 2255 petitioner who has asserted that *Apprendi* is

substantive rather than procedural. Given that a substantive rule is presumptively retroactive, the issue is worth resolving.

when convicted of conduct that is not in fact criminal.

*Bousley* specifically involved the retroactive application of *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), a case in which the Supreme Court had determined exactly which elements the Government had to prove to convict someone for use of a firearm under 18 U.S.C. § 924(c)(1). In *Bailey*, the Supreme Court held that the Government must show active employment of a firearm, thereby settling a dispute among circuits. *Id.* at 142, 116 S.Ct. 501. Prior to *Bailey*, some question existed as to what elements had to be proven under the statute at issue, whereas in this case, no one has questioned that the weight of the drugs must be determined before the court can properly sentence a defendant. The application of *Apprendi* merely changes the method (procedure) of determining the weight of the drugs. Therefore, instead of removing certain conduct from the reach of the criminal law, it merely imposes a procedural safeguard to protect criminal defendants. The rule announced in *Apprendi* is procedural.

(C) *Does Apprendi require the observance of those procedures implicit in the concept of ordered liberty?*

The Supreme Court has articulated a two-part test for this exception. First, the exception applies only to "watershed rules of criminal procedure." *Teague*, 489 U.S. at 311, 109 S.Ct. 1060. Justice Harlan described these as rules which "properly alter our understanding of the bedrock procedural elements that must be found to vitiate the fairness of a particular conviction." *Id.* (quoting *Mackey v. United States*, 401 U.S. 667, 692, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971)). The Supreme Court has explained that the "procedure at issue must implicate the fundamental fairness of the trial." *Id.* at 312, 109 S.Ct. 1060. The second part of the test limits the exception to "those new procedures without which the likelihood of an accurate conviction is

seriously diminished." *Id.* at 313, 109 S.Ct. 1060. As the Supreme Court has noted:

> Because we operate from the premise that such procedures would be so central to an accurate determination of innocence or guilt, we believe it unlikely that many such components of basic due process have yet to emerge. We are also of the view that such rules are "best illustrated by recalling the classic grounds for the issuance of a writ of habeas corpus—that the proceeding was dominated by mob violence; that the prosecutor knowingly made use of perjured testimony; or that the conviction was based on a confession extorted from the defendant by brutal methods."

*Id.* at 313, 109 S.Ct. 1060 (citation omitted).

Courts define this exception narrowly, and most rules do not fit within it. As the Second Circuit has noted, beginning with the rule in *Teague*, the Supreme Court has considered whether eleven new or proposed rules fit within the exception, only to conclude in each case that the rule did not. *United States v. Mandanici*, 205 F.3d 519, 529 (2nd Cir.2000). Examples of new rules that do not apply retroactively include the rule that requires permitting a capital defendant to inform his sentencing jury that he will be parole-ineligible if the prosecution argues he presents a future danger, *O'Dell v. Netherland*, 521 U.S. 151, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997), the rule that due process requires a state to give adequate notice of evidence to be used in a capital sentence proceeding, *Gray v. Netherland*, 518 U.S. 152, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996), the rule announcing that due process is violated by the failure to instruct a jury that it could not convict the prisoner for murder if it found the defendant had a mitigating mental state, *Sawyer v. Smith*, 497 U.S. 227, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990), the rule that the Fifth Amendment bars police initiated interrogation following a suspect's request for counsel in the context of a

separate investigation, *Butler v. McKellar*, 494 U.S. 407, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990), and the rule that the Sixth Amendment's fair cross section requirement applies to a petit jury, *Teague v. Lane*, 490 U.S. 1031, 109 S.Ct. 1771, 104 L.Ed.2d 206 (1989).

The Supreme Court has stated that the rule of *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), is the primary example of a rule fitting within this exception. *O'Dell v. Netherland*, 521 U.S. 151, 167, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997); *see Saffle v. Parks*, 494 U.S. 484, 495, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990) (rule that has "none of the primacy and centrality of the rule adopted in *Gideon*" does not fall under second *Teague* exception). At least two circuit courts have also found that the second *Teague* exception permits retroactive application of the rule announced in *Sullivian v. Lousiana*, which held that a jury instruction relieving the state of the burden of proving an offense beyond a reasonable doubt in violation of *Cage v. Louisiana* can never be harmless. *Adams v. Aiken*, 41 F.3d 175, 178–9 (4th Cir.1994) (a constitutionally deficient reasonable doubt instruction dilutes the reasonable doubt standard, breaches the right to trial by jury, and results in a lack of accuracy and in the denial of a bedrock procedural element that is essential to fairness); *Harmon v. Marshall*, 69 F.3d 963, 964–5 (9th Cir.1995) (trial court's failure to give jury any definition or instruction on an offense was fundamental and basic error that deprived defendant of right to trial by jury and that merited retroactive application); *see Nutter v. White*, 39 F.3d 1154, 1157–8 (11th Cir.1994) ("Like *Gideon*, *Cage* implicates a fundamental guarantee of trial procedure because use of a lower standard of proof frustrates the jury trial guarantee.").

■ At first glance, *Apprendi* seems to fit within the rhetoric of this exception: "A rule that qualifies under this exception must not only improve accuracy [of the trial and conviction], but also 'alter our understanding of the bedrock procedural elements' essential to the fairness of a proceeding." *Sawyer*, 497 U.S. at 242, 110 S.Ct. 2822 (citations omitted). On the one hand, *Apprendi* raises the standard for determining drug weight from a preponderance of the evidence to beyond a reasonable doubt, thereby increasing accuracy. On the other, it requires any factor (besides prior conviction) to be submitted to a jury, thereby implicating a defendant's due process right to trial by jury. Furthermore, in *Apprendi*, the Supreme Court described the New Jersey procedure at issue as "an unacceptable departure from the jury tradition that is an indispensable part of our criminal justice system," thus suggesting that *Apprendi* implicates the bedrock procedures that are implicit in the concept of ordered liberty and that touch on the fundamental fairness of the trial. 530 U.S. at ——, 120 S.Ct. at 2367; *see also In re Winship*, 397 U.S. 358, 363, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (reasonable doubt requirement "has a vital role in our criminal procedure").

However, the only circuit court to have considered the issue has found that *Apprendi* does not fit within the second *Teague* exception.[4] In *Jones v. Smith*, the Ninth Circuit concluded that the new rule announced in *Apprendi* does not apply retroactively. 231 F.3d 1227 (9th Cir.2000). The *Jones* court considered *Apprendi* in light of a habeas corpus case in which the

---

**4.** The Government argues that several circuits have found that *Apprendi* is not retroactive. *See Hernandez v. United States*, 226 F.3d 839 (7th Cir.2000); *In re Joshua*, 224 F.3d 1281 (11th Cir.2000); *Sustache–Rivera v. United States*, 221 F.3d 8 (1st Cir.2000). However, all of those cases deal with second or successive § 2255 motions and are not persuasive in Ware's case. A second motion is allowed if

certified by the court of appeals to contain "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. §§ 2244(b)(2)(A), 2255 ¶ 8(2). Ware is bringing his first § 2255 motion, which does not require that the Supreme Court specifically deem the new rule retroactive.

prisoner challenged his attempted murder conviction on the grounds that the Government had omitted a premeditation charge from a state court murder information but had included such a charge in the jury instructions, thereby amounting to a variance in or amendment to the information. *Id.* at 2278. The court specifically found that "the *Apprendi* rule, at least as applied to the omission of certain necessary elements from the state court information, is neither implicit in the concept of ordered liberty nor an absolute prerequisite to a fair trial." *Id.* at 242. As the court explained, the prisoner's trial was fair because he had actual notice of the accusations against him and because he was aware of the possible sentences he might receive. *Id.* Specifically, despite the fact that the information did not allege the attempted murder was premeditated, both the prosecution and the defense assumed it was alleged and argued the issue of premeditation before the jury. *Id.* at 227. In such circumstances, the omission of particular words from the information did little to increase the risk of convicting an innocent person or of hindering the fairness of the trial. *Id.* at 242.

Though not exactly on point with regard to how *Apprendi* applies to an omission of drug weight from an indictment, the logic of *Jones* can be applied to some of Ware's claims. For instance, Ware makes several claims related to the fact that his indictment did not specify drug quantity and that he was therefore not on notice as to the crime he was accused of committing. However, the indictment used detailed language to describe the crimes for which he was charged and ultimately convicted: count one alleged that Ware and others "did combine, conspire, confederate and agree ... to knowingly and intentionally distribute and possess with intent to distribute cocaine;" count two contained identical language, substituting only "cocaine base" for cocaine; and count three claimed Ware "knowingly and intentionally did unlawfully distribute and possess with intent to distribute ... a quantity of cocaine."

All of the counts also specified that Ware had violated 21 U.S.C. § 841(a)(1) and other applicable code sections. Given such language, it is unreasonable to assume that Ware did not know what crimes the Government had charged simply because the Government failed to specify either the weight of the drugs at issue or the provision of 21 U.S.C. § 841(b)(1) that would determine the applicable sentencing range. In other words, Ware knew he was going to trial for specific drug crimes and lacked only information as to the alleged weight of the drugs at issue. Furthermore, Ware heard various witnesses testify as to the amount of the drugs involved in the transactions in which he participated. He not only had the opportunity to challenge such testimony, but also had the opportunity to challenge the amount of drugs as determined at the sentencing hearing. Though the Government is now required to specify the amount of drugs in indictments, the omission of such information in cases such as Ware's does not undermine his Due Process right to notice of the crimes for which he is charged. To this extent, prisoners such as Ware have not been deprived of a fair trial, and *Apprendi* does not apply retroactively.

This does not completely resolve the issue, however, because the failure to submit the issue of the weight of the drugs to the jury for a determination beyond a reasonable doubt could infringe Ware's fundamental right to a fair trial, thereby pulling such cases within the ambit of the second *Teague* exception. Though no circuit court has addressed this issue, two district courts have. In *United States v. Pittman*, the Oregon district court determined that *Apprendi* did not apply retroactively to a case in which a prisoner attacked a sentence that was based on a judge's determination of the weight of the drugs by a preponderance of the evidence. 120 F.Supp.2d 1263, 1271 (D.Or.2000). The court found that *Apprendi* does not announce the sort of watershed rule that implicates fundamental fairness. *Id.* at

1270. Specifically, the rule does not directly relate to the accuracy of the conviction or sentence, and shifting an element of the offense to a judge instead of a jury does not implicate fundamental fairness. *Id.* Furthermore, the slight probability that using a higher standard of proof (beyond a reasonable doubt instead of preponderance of the evidence) might produce a different result was insufficient to trigger retroactive application. *Id.* (citing *Mackey v. United States,* 401 U.S. 667, 672, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971)). Finally, the court took notice of the *Teague* doctrine's respect for finality, noting that applying *Apprendi* retroactively would "necessitate a review of thousands of cases when actual innocence of the defendant of the charge and sentence is not in doubt." *Id.*

A Minnesota district court reached the opposite conclusion, finding that "*Apprendi* is so grounded in fundamental fairness that it may be considered of watershed importance." *United States v. Murphy,* 109 F.Supp.2d 1059, 1064 (D.Minn.2000). Noting that it had usually determined drug quantity itself and that juries were often specifically instructed that the government did not need to prove the exact amount of the drugs, the *Murphy* court also found that *Apprendi* "compels a radical shift in criminal procedure in federal drug cases." *Id.*

In Ware's case, the district court found the weight of the drugs by a preponderance of the evidence, which the Government argues is sufficiently accurate and reliable to ensure a fair trial. For support, the Government relies on the decisions of several courts that have refused to apply *United States v. Gaudin,* 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), retroactively. *Gaudin* held that in a prosecution for false statement under federal law, the jury, and not the court, must decide the question of materiality. In *Bilzerian v. United States,* the Second Circuit explained that the rule in *Gaudin* was new because it and several other circuits had always allowed a judge to deter-

mine materiality. 127 F.3d 237, 240 (2nd Cir.1997). The court refused to apply the rule retroactively as a watershed rule necessary to fundamental fairness. *Id.* at 241. The court reasoned as follows:

> The rule in *Gaudin* merely shifts the determination of materiality from the judge to the jury. This shifting does not "alter our understanding of the bedrock procedural elements" essential to the fairness of a trial .... There is little reason to believe that juries will have substantially different interpretations of materiality than judges and therefore, practically speaking, *Gaudin,* will do little to alter the status quo. Bilzerian's argument that the *Gaudin* rule should be applied retroactively must fail.

*Id.* at 241; *see United States v. Shunk,* 113 F.3d 31, 37 (5th Cir.1997) ("*Gaudin* error does not meet the second *Teague* exception."); *United States v. Swindall,* 107 F.3d 831, 836 (11th Cir.1997) ("The *Gaudin* rule ... is not a watershed rule of criminal procedure that alters our understanding of the bedrock procedural elements essential to the fairness of a proceeding.").

This reasoning is persuasive in the instant case. In fact, a judge and jury would be more likely to disagree over the concept of materiality than over the weight of drugs. The former is a somewhat nebulous legal concept, and a judge would no doubt bring his legal experience to the issue. The weight of drugs, on the other hand, is far more objective, usually being based on scientific methods of weighing drugs or else on the testimony and approximations of co-indictees who have pled out and law enforcement professionals. It is difficult to imagine a case in which the accuracy of the weight of the drugs is so disputed that a reasonable doubt standard as applied by a jury will greatly increase the likelihood of an accurate determination and thereby increase the fundamental fairness of the trial. Any benefit a defendant gains from a heightened standard and from submitting the issue to the jury in-

stead of a judge is simply not great enough to implicate our fundamental understanding of the bedrock procedural elements essential to a fair proceeding.

Although, for purposes of retroactivity, the accuracy of the rule and its impact on the fairness of the trial are best evaluated in terms of its general effect and not in terms of its effect on particular cases, Ware's case illustrates how unlikely it is that a judge's determination of the weight of the drugs by a preponderance of the evidence standard will dramatically affect the fairness of the conviction or the sentence. In Ware's specific case, based on evidence and testimony presented at trial, the probation officer made a conservative estimate in the sentencing report that Ware had distributed or possessed with intent to distribute 26.6 kilograms of cocaine plus 3.6 grams of cocaine base.[5] The Court adopted those estimates as supported by preponderance of the evidence. Given that only five kilograms of cocaine is needed to place Ware within the absolute highest sentencing range, a jury would have needed to discount the testimony of numerous witnesses who testified to transactions involving large amounts of cocaine. Ultimately, the jury would have needed to find that the cocaine involved weighed over twenty-one kilograms less than the preponderance of the evidence suggested. In such a case, the likelihood that a jury's determination of the weight of the drugs would have increased the accuracy of the conviction is slight at best.

The new rule announced in *Apprendi* is not a watershed rule of criminal procedure within the meaning of the *Teague* doctrine. It does not apply retroactively and Ware cannot rely on it to collaterally attack his sentence.

5. Ware objected to the sentencing report and argued that "the only reliable amounts of cocaine established by the government in this matter are … 3,926 grams seized … and the 3.6 grams of cocaine base seized." Note that this concession would allow him to be sentenced under 21 U.S.C. § 841(b)(1)(B), which prescribes the sentencing range for crimes

### III.

Ware also alleges that the Government ran afoul of the Double Jeopardy Clause because it subdivided what was really a single conspiracy into five different counts. He also asserts that the Double Jeopardy Clause prohibits charging him with civil forfeiture when he has been criminally prosecuted for the same act.

■ The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const., amend. V. It prohibits "a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense." *Department of Revenue of Montana v. Kurth Ranch,* 511 U.S. 767, 769, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994).

■ Ware cannot allege that the Government subjected him to repetitious prosecution because the prohibition against multiple prosecutions is not implicated when the Government prosecutes the defendant in a single proceeding for numerous charges stemming from a single course of conduct. *United States v. Barrett,* 933 F.2d 355, 360 (6th Cir.1991). He can, however, allege that his indictment was multiplicitous. As the Sixth Circuit has explained:

A multiplicitous indictment charges a single offense in several counts. Its dangers are that the defendant may be given multiple sentences for what Congress considered a single offense, and that prolix recitations may falsely suggest to a jury that a defendant has committed not one but several crimes.

involving drugs weighing more than 500 grams but less than five kilograms. Although a lesser amount of drugs might have changed his base offense level in the sentencing report, Ware's ultimate sentence of thirty years does fall within the range prescribed in § 841(b)(1)(B).

*United States v. Duncan,* 850 F.2d 1104, 1108 n. 4 (6th Cir.1988). The key inquiry is whether Congress intended each act charged to be a separate crime. *United States v. Lilly,* 983 F.2d 300, 302 (1st Cir.1992). Traditionally, in *successive* conspiracy indictments, the Sixth Circuit has used the "totality of the circumstances" test to determine whether the conspiracies really charge the same offense within the meaning of the Double Jeopardy Clause. *United States v. Benton,* 852 F.2d 1456, 1463–65 (6th Cir.1988) (citing *United States v. Sinito,* 723 F.2d 1250, 1256 (6th Cir.1983)). As noted, this case does not involve successive indictments, but the test is still helpful in determining whether each count in a single indictment is really a separate and distinct crime. The test calls for comparison of the following elements of each count: (1) the time when the alleged activities occurred; (2) the persons acting as co-conspirators; (3) the statutory offenses charged; (4) the overt acts charged and any descriptions relevant to the nature and scope of the activities the Government seeks to punish; and (5) the locations of the alleged activities. *Id.* at 1462.

■ Count One charged Ware with conspiring to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. § 841(a) and 846 between, in, or about December 1993, and in or about May 1995. Count Two charged Ware with conspiring to distribute and possess with intent to distribute cocaine base between, on, or about December 1993, and in or about May 1995, in violation of 21 U.S.C. § 841(a) and 846. The time frames, co-conspirators, and statutory provisions charged in each count are identical. The latter count, however, involved cocaine base. As enacted by Congress, the provisions of 21 U.S.C. § 841(b) draw distinctions between cocaine and cocaine base. For instance, § 841(b)(1)(A)(ii)(II) punishes crimes involving five kilograms or more of cocaine, whereas § 841(b)(1)(A)(iii) punishes crimes involving fifty grams or more of a substance containing cocaine base. Section 841(b)(1)(B) makes similar distinc-

tions. Given that *Apprendi* now establishes that § 841(b) creates different crimes with different individual elements (the weight and identity of the drugs) that must be proved to a jury, it is fair to say that possession of the two substances is punishable as two distinct crimes. Charging them both in the indictment does not violate the Double Jeopardy Clause's proscription against multiplicitous charges.

■ The only other counts in the indictment to mention § 846, the statutory section addressing conspiracy and attempt, are Four, Five, and Seven. Count Four charged Ware not with conspiracy but with attempt to possess with intent to distribute on or about July 6, 1994. It is fair to say that attempt and conspiracy are two separate crimes, and that Count Four addresses a specific crime on a specific date. In any event, the jury did not find Ware guilty of Count Four and he was therefore not sentenced for the crimes therein and not prejudiced by its inclusion in the indictment. Count Five also does not charge conspiracy but charges distributing and attempting to distribute cocaine between, on, or about July 12, 1994, and July 14, 1994. This count was dropped, but in any event, like Count Four, it states a separate and distinct crime: distributing drugs and attempting to distribute drugs differ from possession and attempt to possess, as charged in the other counts. Finally, Count Seven is the forfeiture clause and merely imposes a second penalty, as discussed below. The Court is convinced that the charges are not multiplicitous in violation of the Double Jeopardy Clause.

■ Ware also alleges the forfeiture provision violates Double Jeopardy. The Double Jeopardy Clause not only protects against multiple prosecutions, but also protects against multiple punishments for the same criminal offense. *United States v. Dixon,* 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). Congress, however, may impose multiple punishments for the same conduct without

violating the Double Jeopardy Clause so long as it clearly expresses its intent to do so. *United States v. Mohammed*, 27 F.3d 815, 819 (2nd Cir.1994).

Ware forfeited his property pursuant to 21 U.S.C. § 853(a), which states that the "court ... shall order, in addition to any other sentence imposed pursuant to this subchapter or subchapter II of this chapter, that the person forfeit to the United States all property described in this subsection." Hence, Congress clearly articulated its intent to impose multiple punishments for drugs offenses. Ware's Double Jeopardy claim is without merit.

## IV.

Ware alleges his Base Offense Level was set by an unconstitutional standard because the indictment did not charge him with violating § 841(b) and the Government did not state the suspected weight of the drugs in the indictment or give him notice of their alleged weight prior to trial. This argument also relies on *Apprendi*. As explained above, that rule does not apply retroactively and cannot be invoked to remedy any defect in the indictment or in the determination of Ware's Base Offense Level. This claim also must fail.

## V.

██ Finally, Ware alleges his lawyer rendered ineffective assistance because he did not object to the indictment on the grounds that it did not charge the weight of the drugs and that it violated the Double Jeopardy Clause.

To establish that his lawyer provided ineffective assistance of counsel, Ware must demonstrate (1) that his counsel's performance was so deficient that he failed to function at a reasonably professional level and (2) that the deficient performance prejudiced Ware by depriving him of a fair trial that would have yielded a reliable result. *Strickland v. Washington*, 466 U.S. 668, 687–8, 700, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). For Ware to succeed on the second prong of the test, he must demonstrate a reasonable probability that but for his counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. 2052.

As explained above, Ware's Double Jeopardy claim is meritless. Thus, his lawyer's failure to raise it cannot reasonably be said to have prejudiced the outcome of the case. Regarding the *Apprendi* claim, at the time of Ware's trial, case law overwhelmingly established that drug weight was a sentencing factor to be decided by a judge and that it did not need to be submitted to a jury. *United States v. Cisneros*, 112 F.3d 1272 (5th Cir.1997); *United States v. Dorlouis*, 107 F.3d 248 (4th Cir.1997); *United States v. Silvers*, 84 F.3d 1317 (10th Cir.1996); *United States v. Moreno*, 899 F.2d 465, 473 (6th Cir.1990); *United States v. Gibbs*, 813 F.2d 596 (3rd Cir.1987); *United States v. Wood*, 834 F.2d 1382 (8th Cir.1987). Ware's lawyer did not err in failing to challenge what was standard procedure at the time of the trial. Furthermore, in light of the law at the time of the trial, an objection to the indictment on the grounds that drug weight was not specified would have been fruitless. Again, Ware cannot reasonably say the failure to make such an objection at the time of trial prejudiced him in any way. Ware's claims for ineffective assistance of counsel must fail.

## VI.

Ware's petition to vacate his sentence and conviction is DENIED.

An appropriate order will enter.

### *ORDER*

Petitioner Robert Ware, Jr., seeks review of his sentence under 28 U.S.C. § 2255. For the reasons set forth in the accompanying memorandum, his petition is denied.

IT IS SO ORDERED.