**UNITED STATES of America,**
**Plaintiff,**

v.

**Kevin Antonio GOODE, Defendant.**

**Nos. 96–CR–80997–DT,**
**00–CV–74400–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 23, 2001.

Mark C. Jones, Asst. U.S. Atty., Flint, MI, for plaintiff.

Kevin Antonio Goode, Bradford, PA, pro se.

## OPINION

DUGGAN, District Judge.

On April 21, 1997, Defendant was convicted by a jury of conspiracy to distribute cocaine, possession with intent to distribute crack cocaine, felon in possession of a firearm, and possession of a firearm with an obliterated serial number. On October 15, 1997, Defendant was sentenced to mandatory life imprisonment on the conspiracy offense, 210 months imprisonment on the possession offense, 120 months imprisonment on the felon in possession offense, and 60 months imprisonment on the possession of a firearm with an obliterated serial number offense, to run concurrently. On July 14, 1999, the United States Court of Appeals for the Sixth Circuit affirmed Defendant's convictions and sentences, and on October 4, 1999, the United States Supreme Court denied Defendant's petition for a writ of certiorari.

On June 9, 2000, Defendant filed a motion for a new trial in this Court pursuant to Rule 33 of the Federal Rules of Criminal Procedure contending that the Sixth Circuit's decision in *United States v. Ovalle*, 136 F.3d 1092 (6th Cir.1998), constituted "new evidence."[1] On July 11,

1. In *Ovalle*, the Sixth Circuit determined that the Eastern District of Michigan's prior jury

2000, this Court denied Defendant's motion for a new trial.

This matter is currently before the Court on Defendant's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. In support of his current motion, Defendant contends (1) that trial counsel was ineffective for failing to move for a judgment of acquittal at the end of the Government's case with respect to the conspiracy charge, (2) that trial counsel was ineffective for allowing the Government to constructively amend the conspiracy charge, (3) that his sentence under 21 U.S.C. § 841(b)(1)(A) was improper because the issue of drug quantity was not submitted to the jury, (4) that the indictment was defective because it failed to charge a penalty, (5) that appellate counsel was ineffective for failing to raise the issues raised in Defendant's current motion on appeal, and (6) that trial counsel was ineffective for failing to move for a judgment of acquittal at the close of the Government's case with respect to the possession charge. None of these issues were previously raised by Defendant. For the reasons stated below, Defendant's motion shall be denied.

### Discussion

■ 28 U.S.C. § 2255 permits a court to afford relief "upon the ground that the sentence was imposed in violation of the Constitution of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." "To prevail on a § 2255 motion alleging constitutional error, the petitioner must establish an error of constitutional magnitude which had a ·substantial and injurious effect or influence on the proceedings." *Watson v. United States,* 165

F.3d 486, 488 (6th Cir.1999) (citing *Brecht v. Abrahamson,* 507 U.S. 619, 637–38, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)).

■ Defendant's claim that he is entitled to relief pursuant to § 2255 because trial counsel was ineffective for failing to move for a judgment of acquittal at the end of the Government's case with respect to the conspiracy charge, as well as his claim that trial counsel was ineffective for allowing the Government to constructively amend the conspiracy charge, are without merit. In support of these claims, Defendant contends that there was no evidence introduced during trial to support the conviction on Count One conspiracy to distribute "cocaine"—because the only evidence introduced at trial related to his involvement with "crack cocaine." According to Defendant, "cocaine" and "crack cocaine" are two different substances and therefore, the evidence introduced at trial does not support a charge of conspiracy to distribute "cocaine." Defendant further contends that to the extent that the Government relied on such evidence as the basis of a conviction on Count One, the Government constructively amended Count One of the indictment from a charge of conspiracy to distribute "cocaine" to a charge of conspiracy to distribute "crack cocaine."

Defendant is mistaken in his belief that evidence of his involvement with "crack cocaine" cannot support a conviction charging conspiracy to distribute "cocaine." "Crack cocaine" is simply one form of "cocaine," and evidence that a person is involved with the distribution of "crack cocaine" is evidence that he was involved with the distribution of "cocaine." As the Government's expert witness Karen Brooks testified: "Cocaine comes in two forms, one of which is cocaine hydrochloride. It generally comes in powdered

selection plan was unconstitutional.

form. And then what is cocaine base is usually known as crack, which is also called a rock." (4/16/97 Tr. at 146; Pet'r Br., Ex. 2–E).

Furthermore, 21 U.S.C. § 841(a)(1) makes it unlawful "to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, *a controlled substance.*" (emphasis added). At least two courts that have considered the issue have found that both cocaine base and crack cocaine constitute a Schedule II controlled substance under 21 U.S.C. § 812 because they are simply different forms of "cocaine." *See Sanders v. United States*, 237 F.3d 184 (2d Cir.2001) (recognizing that both cocaine base and crack cocaine are mixtures containing cocaine and therefore within definition of Schedule II controlled substance for purposes of § 841); *United States v. Talley*, No. 99–4146, 1999 WL 1054151 (4th Cir. Nov.22, 1999) (finding that cocaine base falls within definition of "cocaine, its derivatives, or any compound or mixture which contains cocaine" for purposes of § 841).

■ Defendant himself admits that "[t]here was ample testimony provided by [G]overnment witness[es] during the trial about the Petitioner['s] alleged dealings in a crack cocaine conspiracy." (Pet'r Resp. at 4). Clearly there was significant evidence introduced during trial that Defendant was involved with the distribution of a Schedule II controlled substance and therefore, viewing the evidence in a light most favorable to the Government, as the Court would have been required to do on a motion for directed verdict, the Court would have denied any motion for acquittal because the evidence presented at trial was sufficient to support a jury finding, beyond a reasonable doubt, that the Defendant was guilty of Count One. Furthermore, as the term "cocaine" includes "crack cocaine" for purposes of determin-

ing whether Petitioner was guilty of conspiring to manufacture, distribute, or dispense, a controlled substance, the Court rejects Defendant's claim that there was a "variance."

With respect to Defendant's claim that trial counsel was ineffective for failing to move for a judgment of acquittal at the close of the Government's case with respect to the possession charge, this claim similarly lacks merit. Count Five charged Defendant with possession with intent to distribute "crack cocaine." As set forth above, there was a significant amount of evidence introduced relating to Defendant's involvement with crack cocaine, which would allow the jury to find, beyond a reasonable doubt, that the Defendant did, in fact, possess with intent to distribute crack cocaine. As the Sixth Circuit recognized in relation to a similar claim raised on direct appeal, "various witnesses, including police officers and co-conspirators, testified that the substances in question were crack, and the laboratory chemist testified that some of the cocaine tested positive for the presence of cocaine base." *United States v. Goode*, No. 97–2163, 1999 WL 520553 at *5 (July 14, 1999).

Defendant's claim that his sentence under 21 U.S.C. § 841(b)(1)(A) was improper because the issue of drug quantity was not submitted to the jury, as well as his claim that the indictment was defective because it failed to charge a penalty, are premised on the Supreme Court's recent decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In *Apprendi*, the Supreme Court held that: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 120 S.Ct. at 2362–63; *see also*

*United States v. Page,* 232 F.3d 536,—(6th Cir.2000) (discussing *Apprendi* ).

With respect to drug convictions under 21 U.S.C. § 841, the Sixth Circuit has held that under *Apprendi,* the quantity and type of drugs attributable to a particular defendant must be submitted to the jury for a determination beyond a reasonable doubt. *See Page,* 232 F.3d at 542, *United States v. Flowal,* 234 F.3d 932 (6th Cir. 2000) ("Because the amount of the drugs at issue determined the appropriate statutory punishment, a jury should have determined the weight of the drugs beyond a reasonable doubt."); *see also United States v. Hishaw,* 235 F.3d 565 (10th Cir. 2000), *United States v. Shepard,* 235 F.3d 1295 (11th Cir.2000), *United States v. Richardson,* 233 F.3d 223 (4th Cir.2000). As explained by the Sixth Circuit in *Page:*

> Pursuant to the provisions of § 841, the quantity of drugs is a factual determination that significantly impacts the sentence imposed. Section 841(b)(1)(C) provides for a maximum penalty of 20 years unless the crime involves a quantity of drugs as set forth in subsections (A) or (B). Those subsections provide for a maximum penalty of 40 years if the crime involved 5 grams or more of crack cocaine, *see* § 841(b)(1)(B), and a maximum penalty of life imprisonment if the crime involved 50 grams or more of crack cocaine, *see* § 841(b)(1)(A). The district judge found, by a preponderance of the evidence, the quantity of drugs for which each defendant was accountable. Based on this drug quantity determination, each defendant was sentenced to a term of imprisonment exceeding the 20 year maximum set forth in § 841(b)(1)(C). However, as instructed

in *Apprendi,* a defendant may not be exposed to a greater punishment than that authorized by the jury's guilty verdict. The jury merely found that defendants conspired to distribute and possess to distribute some undetermined amount of crack cocaine. As such, defendants cannot be subjected to the higher penalties under § 841(b)(1)(A) or (B). Rather, the maximum sentence that may be imposed on this count is 20 years pursuant to § 841(b)(1)(C).

*Page,* 232 F.3d at 543; *see also Flowal,* 234 F.3d at 938.

Similar to the indictment in *Page,* the conspiracy charge in Count One of the second superseding indictment, for which Defendant was sentenced to mandatory life imprisonment, charged Defendant with conspiring to distribute an undetermined amount of cocaine. It is undisputed that the jury made no findings regarding quantity. Instead, Defendant's sentence of mandatory life under 21 U.S.C. § 841(b)(1)(A) was based upon the Court's finding, beyond a preponderance of the evidence, that Defendant was responsible for 50 to 150 grams of cocaine, coupled with his prior felony drug convictions.

As the Sixth Circuit explained in *Page,* however, where there has been no jury finding regarding the quantity of drugs attributable to a particular defendant, the statutory maximums set forth in 21 U.S.C. § 841(b)(1)(C) apply. Taking into account Defendant's prior felony drug convictions, the statutory maximum under § 841(b)(1)(C) is thirty years. *See Flowal,* 234 F.3d at 936 & 938 (noting that under § 841(b)(1)(C), a defendant with two prior felony drug convictions faces a statutory maximum of thirty years).[2] Defendant's

---

**2.** As the Sixth Circuit explained in *Flowal,* under § 841(b)(1), a defendant with two prior felony drug convictions faces a statutory maximum of mandatory life imprisonment under § 841(b)(1)(A), life (not mandatory) under § 841(b)(1)(B), and thirty years under § 841(b)(1)(C).

mandatory term of life imprisonment on Count One is clearly greater than the statutory maximum set forth in § 841(b)(1)(C) and therefore, the Court is satisfied that under *Apprendi,* Defendant's sentence on Count One would be erroneous.[3] *See id.* at 937–38 (holding that mandatory penalty of life imprisonment under § 841(b)(1)(A) is not permissible where quantity of drugs has not been determined by the jury).

██ Although the Court is satisfied that Defendant's sentence on Count One of the second superseding indictment would be erroneous under *Apprendi,* the Court is also satisfied that Defendant may not take advantage of the rule announced in *Apprendi* as *Apprendi* does not apply retroactively to cases on collateral review. Defendant's conviction became final on October 4, 1999, when the United States Supreme Court denied Defendant's petition for a writ of certiorari. *Apprendi* was decided on June 26, 2000. In general, new constitutional rules of criminal procedure do not apply retroactively to cases on collateral review unless they fall within two limited exceptions: (1) the new rule places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe" or (2) the new rule requires the observance of those procedures that "are implicit in the concept of ordered liberty." *Teague v. Lane,* 489 U.S. 288, 307, 109 S.Ct. 1060, 1073, 103 L.Ed.2d 334 (1989) (internal quotations omitted).

· A majority of the courts that have considered the issue have held that *Apprendi* does not apply retroactively to cases on collateral review. *See e.g., Jones v. Smith,* 231 F.3d 1227, 1238 (9th Cir.2000); *United States v. Brown,* 2000 WL 1880280 (N.D.Tex. Dec.28, 2000); *Klein v. United States,* 125 F.Supp.2d 460 (D.Wyo.2000); *Ware v. United States,* 124 F.Supp.2d 590 (M.D.Tenn.2000); *United States v. Johnson,* 126 F.Supp.2d 1222 (D.Neb.2000); *United States v. Pittman,* 120 F.Supp.2d 1263 (D.Or.2000). In contrast, to this Court's knowledge only two courts have found that *Apprendi* does apply retroactively to cases on collateral review. *See Darity v. United States,* 124 F.Supp.2d 355 (W.D.N.C. Dec.4, 2000); *United States v. Murphy,* 109 F.Supp.2d 1059 (D.Minn. 2000). Because the Court is satisfied that *Apprendi* did not announce a new rule of criminal procedure warranting retroactive application, it shall join the majority of courts that have addressed the issue thus far in concluding that *Apprendi* does not apply retroactively to cases on collateral review.

██ Defendant himself recognizes that *Apprendi* announced a "new rule of law." (Pet'r Resp. at 10). Defendant, however, contends that *Teague* is inapplicable to this case because the rule announced in *Apprendi* is substantive, not procedural. (*Id.* at 9–10). *Teague* only bars retroactive application of new procedural rules, not substantive rules. At least two district courts that have considered this issue have found that *Apprendi* constitutes a procedural rule "because it dictates what fact-finding procedure must be employed to

---

**3.** Although Count Five of the indictment also charged Defendant with possession with intent to deliver an unspecified amount of crack cocaine, Defendant was sentenced to 210 months imprisonment on this offense. Because Defendant's sentence on the possession charge is within the thirty years authorized by § 841(b)(1)(C), Defendant has no grounds to challenge such sentence under *Apprendi. See*

*United States v. Munoz,* 233 F.3d 410, 413–14 (6th Cir.2000) (finding *Apprendi* inapplicable where defendant sentenced within twenty year maximum of § 841(b)(1)(C)); *see also United States v. Corrado,* 227 F.3d 528, 542 (6th Cir.2000) (holding that enhanced sentences for RICO conspiracy convictions did not trigger *Apprendi* because they fell within base twenty-year maximum).

ensure a fair trial," not a substantive element of the offense itself. *Brown,* 2000 WL 1880280 at *4; *Ware,* 2000 WL 1827590 at 593–94. As the district court in *Ware* explained:

> [N]o one has questioned that the weight of the drugs must be determined before the court can properly sentence a defendant. The application of *Apprendi* merely changes the method (procedure) of determining the weight of the drugs. Therefore, instead of removing certain conduct from the reach of the criminal law, it merely imposes a procedural safeguard to protect criminal defendants. The rule announced in *Apprendi* is procedural.

*Ware,* 124 F.Supp.2d at 596 (distinguishing *Bousley v. United States,* 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998), in which the United States Supreme Court held that the rule announced in *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), that 18 U.S.C. § 924(c)(1) requires evidence of active employment of a firearm by the defendant, was not *Teague*-barred on collateral review).

To this Court's knowledge, the only court to have found *Apprendi* to be a substantive rather than a procedural rule is the United States District Court for the Western District of North Carolina in *Darity. Darity,* 124 F.Supp.2d at 360–61. Interestingly, the district court in *Darity* did not refute the proposition that *Apprendi* announced a rule of criminal procedure, but rather, found that *Apprendi* was "*also* a substantive decision." *Id.* (emphasis added). The Supreme Court's own statement in *Apprendi* that "[t]he substantive basis for New Jersey's enhancement ...

[was] not at issue; the adequacy of New Jersey's procedure [was]," tends to refute such a conclusion. *Apprendi,* 120 S.Ct. at 2354. Therefore, this Court agrees that *Apprendi* did not announce a new substantive rule, but rather, a new rule of criminal procedure subject to *Teague's* retroactivity analysis.

■ Next, Defendant argues that even if the Court finds the rule announced in *Apprendi* to be procedural, the rule should nonetheless apply retroactively on collateral review because it falls within the second exception to the *Teague* retroactivity bar as a "new 'watershed' rule of criminal procedure implicating fundamental fairness and accuracy of the criminal proceeding." [4] (Pet'r Resp. at 11). This Court disagrees.

The second *Teague* exception "requires the retroactive application of certain 'watershed rules of criminal procedure,'" for which "(1) a failure to adopt the new rule 'creates an impermissibly large risk that the innocent will be convicted,' and (2) 'the procedure at issue ... implicate[s] the fundamental fairness of the trial.'" *Jones,* 231 F.3d at 1237 (quoting *Teague,* 489 U.S. at 312, 109 S.Ct. at 1060). Few rules have met the stringent requirements of this exception. *See Ware,* 124 F.Supp.2d at 596–97 (noting that including *Teague,* the Supreme Court has considered eleven "new rules," determining each time that the rule did not fall within the exception). As the Supreme Court explained in *Teague:*

> Because we operate from the premise that such procedures would be so central to an accurate determination of innocence or guilt, we believe it unlikely that many such components of basic due process have yet to emerge. We are also of

---

**4.** The first *Teague* exception is clearly inapplicable to the new rule announced by *Apprendi. See Jones,* 231 F.3d at 1237; *Brown,* 2000 WL 1880280 at *3; *Klein,* 125 F.Supp.2d at 467– 68; *Ware,* 124 F.Supp.2d at 592; *Johnson,* 126 F.Supp.2d at 1225; *see also Murphy,* 109 F.Supp.2d at 1063.

the view that such rules are best illustrated by recalling the classic grounds for the issuance of a writ of habeas corpus—that the proceeding was dominated by mob violence; that the prosecutor knowingly made use of perjured testimony; or that the conviction was based on a confession extorted from the defendant by brutal methods.

*Teague*, 489 U.S. at 313, 109 S.Ct. at 1077 (internal quotation and citation omitted). Accordingly, this second exception should be limited to "those new procedures without which the likelihood of an accurate conviction is seriously diminished." *Id.*

As previously mentioned, two district courts have concluded that *Apprendi* is retroactive to cases on collateral review. *See Murphy,* 109 F.Supp.2d at 1063–64; *Darity,* 124 F.Supp.2d at 360. These courts, however, focused exclusively upon the constitutional import of the reasonable doubt standard and the right to a trial by jury, without considering whether the rule announced in *Apprendi* actually improves the accuracy of such convictions. Although the Court agrees with these courts that "[t]he reasonable doubt standard plays a vital role in the American scheme of criminal procedure," *Darity,* 124 F.Supp.2d at 360 (quotation omitted), the Court does not agree that the rule announced in *Apprendi* improves the accuracy of determining a defendant's guilt or innocence. At most, the rule announced in *Apprendi* improves the accuracy of determining the defendant's potential sentence. *See Klein,* 125 F.Supp.2d at *467. Therefore, in this Court's opinion, a failure to adopt *Apprendi* does not represent "an impermissibly large risk that the innocent will be convicted." *Teague,* 489 U.S. at 312, 109 S.Ct. at 1060.

At least four district courts have concluded that *Apprendi* did not announce the type of "watershed rule" requiring retroac-

tivity. *See Brown,* 2000 WL 1880280 at *3–*4; *Ware,* 124 F.Supp.2d at 598–99, *Johnson,* 126 F.Supp.2d at 1225–26, *Pittman,* 120 F.Supp.2d at 1270–71. As the district court in *Ware* recognized, "the rule does not directly relate to the accuracy of the conviction or sentence, and shifting an element of the offense to the judge instead of the jury does not implicate fundamental fairness." *Id.* See also *Johnson,* 126 F.Supp.2d at 1225–26, *Pittman,* 120 F.Supp.2d at 1270. As the court explained:

The weight of drugs, . . ., is far more objective, usually being based on scientific methods of weighing drugs or else on the testimony and approximations of co-indictees who have pled out and law enforcement professionals. It is difficult to imagine a case in which the accuracy of the weight of the drugs is so disputed that a reasonable doubt standard as applied by a jury will greatly increase the likelihood of an accurate determination and thereby increase the fundamental fairness of the trial. Any benefit a defendant gains from a heightened standard and from submitting the issue to the jury instead of a judge is simply not great enough to implicate our fundamental understanding of the bedrock procedural elements essential to a fair proceeding.

*Id.* at 599–600; *see also Pittman,* 120 F.Supp.2d at 1270.

Furthermore, Count One of the indictment clearly charged Defendant with violating 21 U.S.C. § 841, for which the maximum prescribed penalty is mandatory life. Therefore, the Court finds it unreasonable to believe that Defendant had no knowledge that, depending upon the ultimate quantity of drugs attributed to him, he was potentially facing a mandatory life sentence. In this regard, the Court agrees with the district court in *Johnson* that "[i]t

is neither implicit in the concept of ordered liberty nor an absolute prerequisite to a fair trial that the indictment be made any more specific in this regard." *Johnson,* 126 F.Supp.2d at 1227; *see also Ware,* 124 F.Supp.2d at 597–98.

It is also instructive that courts considering *Apprendi* challenges on direct review have applied a harmless error analysis, thereby suggesting that the failure to submit the question of drug quantity to the jury does not affect the fundamental fairness and accuracy of the criminal proceedings. *See Pittman,* 120 F.Supp.2d at 1270–71 (citing *United States v. Garcia–Guizar,* 227 F.3d 1125 (9th Cir.2000); *United States v. Page,* 232 F.3d 536 (6th Cir.2000); *United States v. Nealy,* 232 F.3d 825 (11th Cir.2000); *United States v. Sheppard,* 219 F.3d 766 (8th Cir.2000)); *see also Johnson,* 126 F.Supp.2d at 1226–27. As the standard for invoking "structural" error on direct review is similar to that for "watershed" principles under *Teague, see Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), the fact that courts have been reluctant to recognize *Apprendi* errors as "structural" in nature indicates to this Court that *Apprendi* challenges do not implicate fundamental fairness or the accuracy of the proceeding as required by *Teague.*

In determining that *Apprendi* is not retroactive on collateral review, courts have also been cognizant of the effects that a contrary conclusion would have upon the judicial system. As the district court in *Pittman* cautioned:

> [A]ny other conclusion could well lead to overwhelming and disastrous results given that every court in every jurisdiction in the country has treated drug quantity

as a sentencing factor for the judge to determine for well over ten years. Respect for the doctrine of finality, a critical component underlying the Court's decision in *Teague,* must impose some reasonable limits. Requiring retroactive application of *Apprendi* to every federal and state sentence imposed under such a bifurcated fact-finding system would necessitate a review of thousands of cases when actual innocence of the defendant of the charge and sentence is not in doubt.

*Pittman,* 120 F.Supp.2d at 1270; *see also Ware,* 124 F.Supp.2d at 598–99. As stated by the district court in *Johnson,* "*Apprendi* may be a watershed ruling in the sense that it 'threatens to unleash a flood of petitions by convicted defendants seeking to invalidate their sentences,' but it does not stand for the proposition that resentencing is required in all cases."[5] *Johnson,* 126 F.Supp.2d at 1226 (quoting *Apprendi,* 120 S.Ct. at 2394–95 (O'Connor, J., dissenting)) (internal citation omitted).

The Court is satisfied that *Apprendi* does not fall within any exception to the principles announced in *Teague* and therefore, shall not be applied retroactively to cases on collateral review. Accordingly, Defendant's claims based upon the new rule of criminal procedure announced in *Apprendi* must be denied.

▇▇▇▇ Defendant also asserts that his sentence should be vacated based upon the ineffective assistance of trial and/or appellate counsel. In essence, Defendant contends that both his trial and appellate counsel were ineffective for failing to raise the issues raised by his current motion. To establish ineffective assistance of coun-

---

**5.** The Court notes, however, that this potential "flood of petitions" may well be less than originally anticipated as only those sentences that exceed the base statutory maximums of § 841(b)(1) are subject to the rule announced in *Apprendi.* *See Murphy,* 109 F.Supp.2d at 1064 n. 3.

sel, Defendant must satisfy a two-prong test. First, Defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In so doing, Defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id. See also O'Hara v. Wigginton,* 24 F.3d 823, 828 (6th Cir.1994). Second, Defendant must demonstrate that such performance prejudiced his defense. *Id.* To demonstrate prejudice, Defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068.

As stated above, the established precedent in every circuit, including the Sixth Circuit, before *Apprendi* was that drug quantity was not required to be charged in the indictment or submitted to the jury. Consequently, there would have been no reasonable probability of success in raising such a challenge during trial or on appeal. *See Johnson,* 126 F.Supp.2d at 1224 n. 1. This Court cannot say that trial/appellate counsel were deficient in failing to raise a challenge that, at the time, was clearly without merit. Accordingly, Defendant's claims of ineffective assistance of counsel based upon trial/appellate counsel's failure to assert an *Apprendi*-type challenge during trial or on appeal are without merit.

### Conclusion

For the reasons stated above, Defendant's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 shall be denied.

A Judgment consistent with this Opinion shall issue forthwith.