Edmond Leon **LEOPARD**, Petitioner,

v.

**UNITED STATES** of America, Respondent.

No. CIV–97–149–S.

United States District Court, E.D. Oklahoma.

Jan. 29, 2001.

Mark Green, Muskogee, for Plaintiff.

Paul Hess, Asst. U.S. Attorney, Muskogee, for Defendant.

## *ORDER*

SEAY, District Judge.

Following a jury trial, Edmond Leon Leopard was convicted of (I) attempting to manufacture methamphetamine; (II) possessing a listed chemical with the intent to manufacture methamphetamine; (III) possessing with the intent to distribute methamphetamine; (IV) using or carrying a firearm during and in relation to a drug trafficking offense; and (V) being a felon in possession of a firearm. Leopard was sentenced to a term of 327 months as to each of Counts I and III and 120 months as to each of Counts II and V, all terms to be served concurrently. As to Count IV, Leopard received a sixty-month sentence to be served consecutively to the sentences in the remaining counts. On direct appeal, Leopard's convictions and sentences were affirmed. *United States v. Leopard,* 936 F.2d 1138 (10th Cir.1991) (*Leopard I* ).

On March 11, 1997, Leopard filed a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255. In his motion, Leopard argued two grounds which were not raised on direct appeal: (1) an erroneous jury instruction on "use" of a firearm pursuant to *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) and (2) the failure of the government to prove at sentencing that the type of methamphetamine involved in his counts of conviction was D-methamphetamine. By order dated December 23, 1997, this court denied Leopard's motion and dismissed his case. On March 16, 1999, the Tenth Circuit Court of Appeals vacated the judgment of this court and remanded the case for further proceedings. *United States v. Leopard*, 170 F.3d 1013 (10th Cir.1999)(*Leopard II* ). In particular, the Tenth Circuit determined this court committed error in failing to provide Leopard with the services of legal counsel in connection with an evidentiary hearing held on November 21, 1997, for the purpose of determining the type of methamphetamine involved in Leopard's counts of conviction. *Id.* at 1015–16; *see United States v. Glover*, 97 F.3d 1345, 1350 (10th Cir.1996). Following remand, counsel was appointed for Leopard. A second evidentiary hearing, this time with appointed counsel present, was conducted on August 23, 2000. While no evidence was presented at this second hearing, the court did hear the arguments of counsel on the issues fairly presented by Leopard's motion. Having considered these arguments, as well as all briefs submitted by the parties, the court finds Leopard is entitled to

be resentenced on Count II. In all other respects, Leopard's motion should be denied.

*Distinction Between D- and LMethamphetamine*

■ As part of his section 2255 motion, Leopard contends he is entitled to relief based on the court's unsubstantiated sentencing for D-methamphetamine. Leopard contends he received ineffective assistance of counsel during the trial proceedings because his counsel failed to raise an objection to the type of methamphetamine determined by the court for purposes of sentencing calculations. *See Glover*, 97 F.3d at 1348–50 (failure to object to D-methamphetamine at sentencing was ineffective assistance of counsel). At the time of Leopard's trial, there existed a significant sentencing difference between D-methamphetamine and L-methamphetamine.[1]

■ The government had the "burden of proof and production during the sentencing hearing to establish the amounts and types of controlled substances related to the offense." *United States v. Deninno*, 29 F.3d 572, 580 (10th Cir.1994), *cert. denied*, 513 U.S. 1158, 115 S.Ct. 1117, 130 L.Ed.2d 1081 (1995). In this case, no determination was made during the sentencing hearing regarding the type of methamphetamine involved in Counts I and III. The court sentenced based on the testimony of forensic chemists estimating that 41.7 pounds of methamphetamine could be produced with the chemicals and lab equipment purchased by Leopard for the purpose of manufacturing illegal drugs. In

---

1. L-form of methamphetamine was given a lesser equivalency in the commentary's Drug Equivalency Tables to § 2D1.1 consistent with the fact that L-methamphetamine "is an inert form with little or no physiological effects." *United States v. Carroll*, 6 F.3d 735, 743 (11th Cir.1993), *cert. denied*, 510 U.S.

1183, 114 S.Ct. 1234, 127 L.Ed.2d 577 (1994). The distinction between D- and L-methamphetamine was eliminated as of November 1, 1995, by an amendment treating all forms alike for sentencing purposes under the Sentencing Guidelines. *See Glover*, 97 F.3d at 1347 n. 2.

addition to this estimate, the record establishes that at the time of his arrest Leopard was in possession of 92.2 grams of finished methamphetamine. At the evidentiary hearing previously conducted in this matter on November 21, 1997, Kent Glanville, a Drug Enforcement Agency chemist, testified that the methamphetamine seized from Leopard's person and vehicle when he was arrested was DL methamphetamine, which is considered D methamphetamine. Leopard presented nothing to the contrary at either the November 21, 1997, or August 23, 2000, evidentiary hearings.

Given the undisputed testimony of Glanville, the court finds that the government has satisfied its burden of establishing the enhanced D-methamphetamine sentenced imposed on Leopard under Counts I and III. The fact that Glanville's testimony only reflected an assessment of the methamphetamine seized from Leopard does not alter this finding. When making an estimate as to producible quantities from chemical and equipment found at the arrest scene, it is perfectly reasonable for the court to find by the preponderance of the evidence that such quantities would equate with D-methamphetamine given the fact that specified quantities of finished D-methamphetamine were found on Leopard's person and in his vehicle. Moreover, in light of the presence of such D-methamphetamine at the scene, it is highly unlikely that Leopard would be attempting to manufacture L-methamphetamine, the relatively non-psychoactive form of methamphetamine, with the chemicals and equipment on hand. Consequently, the court finds the government has substantiated the D-methamphetamine sentence imposed on Leopard.[2]

*Bailey Instructional Error*

■ Leopard was convicted of the charge in Count IV—using or carrying a firearm in relation to a drug trafficking offense—under a deficient instruction in light of the subsequent Supreme Court decision in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). Collateral *Bailey* claims such as that presented by Leopard require a showing of actual innocence of the § 924(c) charge before any relief can be granted. *See United States v. Powell*, 159 F.3d 500, 501–02 (10th Cir.1998), *cert. denied,* 525 U.S. 1168(199), 119 S.Ct. 1088, 143 L.Ed.2d 89. In order to satisfy this actual innocence test, the Supreme Court has held that a petitioner "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). Thus, only if Leopard "can establish his factual innocence of both the use and carry prongs of § 924(c)" is he entitled to relief based on the erroneous *Bailey* instruction. *Leopard II,* 170 F.3d at 1017.

■ Given the Supreme Court's holding in *Bousley,* this court has undertaken a review of the trial transcript to determine the evidentiary sufficiency on the carry prong of § 924(c). On May 1, 1990, Leopard was arrested in the Walmart parking lot in Broken Bow, Oklahoma, after having arranged with undercover DEA agents to purchase chemicals and equipment necessary for the manufacture of methamphetamine. A subsequent search of Leopard uncovered a .22 Magnum pistol and a small amount of methamphetamine in his right

---

2. To the extent Leopard's motion and briefs can be interpreted as an attack on the court's estimate of 41.7 pounds of producible methamphetamine, the court notes that the Tenth Circuit rejected this argument on direct appeal and held the court properly approximated the quantity of methamphetamine. *Leopard I,* 936 F.2d at 1141–42.

front coat pocket. An additional search of the pickup truck Leopard drove to the parking lot uncovered a Colt .45 caliber automatic pistol and a small amount of methamphetamine. Leopard had parked the pickup truck two parking places from the U-haul truck containing the chemicals and equipment which the DEA agents had brought to the scene.

■ Under these circumstances, Leopard clearly carried a firearm during a drug transaction. Carrying for purposes of a § 924(c) conviction requires a showing of "possession of the weapon through exercise of dominion or control; and transportation of the weapon." *United States v. Spring,* 80 F.3d 1450, 1465 (10th Cir.), *cert. denied,* 519 U.S. 963, 117 S.Ct. 385, 136 L.Ed.2d 302 (1996). Leopard came to the scene of a drug transaction, i.e., the purchase of chemicals and equipment for the manufacture of methamphetamine, with a .22 pistol in his pocket and, furthermore, had ready access to the .45 pistol in his pickup truck wherein he possessed quantities of methamphetamine. Thus, it is beyond doubt that he possessed and transported the firearms during and in relation to a drug trafficking offense. Consequently, Leopard cannot establish his actual innocence under *Bousley* and the court rejects his claim for relief based on the *Bailey* instructional error.

*Application of Apprendi*

■ Leopard argues for the application of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), to the facts of his case. In *Apprendi,* the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.,* 120 S.Ct. at 2362–63. Leopard contends that neither the drug type nor the quantity of methamphetamine were submitted to the jury and that his subsequent sentence for a term beyond the twenty-year statutory maximum authorized by 21 U.S.C. § 841(b)(1)(C), as determined by the court, was necessarily imposed in violation of *Apprendi.* The court rejects Leopard's argument for the reason that it declines to apply *Apprendi* retroactively to Leopard's request for collateral review of his convictions.

*Apprendi* enunciates a rule of constitutional law and "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final." *Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). Generally, however, new constitutional rules are not applied to criminal cases on collateral review. *Teague v. Lane,* 489 U.S. 288, 303, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). This general rule is subject to two limited exceptions. New rules of criminal procedure are applied to cases on collateral review if (1) it places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe" *id.* at 311, 109 S.Ct. 1060, or (2) it "would be so central to an accurate determination of innocence or guilt," *id.* at 313, 109 S.Ct. 1060. The constitutional rule announced in *Apprendi* simply does not fit within either of these limited exceptions. *See Klein v. United States,* 125 F.Supp.2d 460 (D.Wyo.2000) (*Apprendi* rule does not place conduct beyond criminal law making authority or improve the accuracy in determining the guilt or innocence of a defendant); *see also United States v. Quarterman,* 2000 WL 1862684 (10th Cir.2000) (recognizing Eleventh Circuit's opinion in *In re Joshua,* 224 F.3d 1281, 1283 (11th Cir.2000), declining to apply *Apprendi* retroactively on collateral review). Consequently, because the

court finds that *Apprendi* does not fall within either of the exceptions to the non-retroactivity rule, the court declines to apply *Apprendi* in this section 2255 proceeding.

*Constitutionality of Section 922(g)(1) Conviction*

■ Leopard was convicted in Count V of being felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Relying on *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), Leopard contends the statute as applied to the facts of his case is unconstitutional because the government was not required to prove that his firearm possession had a substantial effect on interstate commerce. Unfortunately for Leopard, the Tenth Circuit has consistently rejected similar attacks premised on *Lopez* and the theory that Congress exceeded its power to regulate commerce in enacting section 922(g)(1). *United States v. Dorris*, 236 F.3d 582 (10th Cir.2000); *United States v. Farnsworth*, 92 F.3d 1001, 1006 (10th Cir.), *cert. denied*, 519 U.S. 1034, 117 S.Ct. 596, 136 L.Ed.2d 524 (1996); *United States v. Bolton*, 68 F.3d 396 (10th Cir.1995), *cert. denied*, 516 U.S. 1137, 116 S.Ct. 966, 133 L.Ed.2d 887 (1996). Thus, Leopard's attack on his section 922(g)(1) conviction based on the argument that the government was required to make a showing of a substantial effect on interstate commerce is without merit under established Tenth Circuit precedent. The testimony at trial established that the two firearms in question were manufactured outside of the State of Oklahoma and would they would have had to have traveled in interstate commerce to arrive in Oklahoma. This testimony is sufficient to establish the interstate commerce nexus of the statute. "Section 922(g)'s requirement that the firearm have been, at some time, in interstate commerce is sufficient to establish its constitutionali-

ty under the Commerce Clause." *Bolton*, 68 F.3d at 400 (citation omitted). Thus, the court rejects Leopard's constitutional attack on Count V.

*Multiplicity—Counts IV and V*

■ Leopard raises a claim of multiplicity with respect to Counts IV and V arguing that the government has "stacked" these offenses by using the same .22 firearm to support convictions under both counts. The court disagrees. A multiplicity argument refers to multiple counts of the indictment covering the same criminal behavior. Double jeopardy concerns arise when there is the threat of multiple convictions and sentences for the same offense. *United States v. Johnson*, 130 F.3d 1420, 1424 (10th Cir.1997), *cert. denied*, 525 U.S. 829, 119 S.Ct. 78, 142 L.Ed.2d 61 (1998). The test to be applied in double jeopardy cases was set forth by the Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932):

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Id.* at 304, 52 S.Ct. 180. The crimes charged in Counts IV and V involve separate statutory provisions—using or carrying a firearm during and in relation to a drug trafficking offense, 18 U.S.C. § 924(c) (Count IV), and being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1) (Count V). The section 924(c) conviction required proof that Leopard (1) knowingly used or carried a firearm (2) during and in relation to a drug trafficking offense. The section 922(g)(1) conviction required proof that Leopard (1) knowingly possessed a firearm, (2) in or affecting commerce, and (3) that prior to said possession Leopard had

been convicted of a felony by a court of the United States or of a State. A comparison of these elements establishes that unique elements of proof are necessary to sustain the respective convictions. Consequently, double jeopardy is not offended as the crimes charged in Counts IV and V are not multiplicitous.

*Listed–Chemical Sentencing on Count II*

■ Leopard attacks the sentence he received on Count II for possessing a listed chemical with the intent to manufacture methamphetamine. Leopard claims the court committed error in calculating his sentence under Count II by applying U.S.S.G. § 2D1.1. In *United States v. Voss,* 956 F.2d 1007 (10th Cir.1992), the Tenth Circuit was confronted with a similar challenge to a listed-chemical sentence calculated as a controlled-substance sentence under U.S.S.G. § 2D1.1. The Tenth Circuit reversed Mr. Voss's sentence because "the guideline most readily applicable to drug crimes," i.e., U.S.S.G. § 2D1.1, "fail[ed] ... to cover the described offense," and there was "no sufficiently analogous guideline" to apply in accordance with U.S.S.G. § 2X5.1. *Id.* at 1013. The Tenth Circuit, therefore, remanded the case to the district court for resentencing pursuant to the

provisions of 18 U.S.C. § 3553(b). *Id.* That section provides: "In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2)." Under 18 U.S.C. § 3553(a)(2), the court in imposing a sentence shall consider the need for such sentence "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

When Leopard was sentenced in 1990 for possession of a listed chemical with the intent to manufacture a controlled substance, this court calculated his sentence for such crime under U.S.S.G. § 2D1.1.[3] Thus, under the holding of *Voss,* this court committed the same error as did the district court in *Voss.* Consequently, the court concludes that Leopard is entitled to have his sentence on Count II vacated and he is entitled to be resentenced on Count II in accordance with 18 U.S.C. § 3553(b).[4]

---

**3.** As noted by the Tenth Circuit in its opinion in this case, Guideline amendment section 2D1.11, effective November 1991, "obviated the *Voss* problem (prospectively) by directing the use of either the listed-chemical offense level or the controlled-substance offense level, whichever is higher." *Leopard II,* 170 F.3d at 1017 n. 5.

**4.** In its December 5, 1997, response to Leopard's motion to amend, the government objected to Leopard amending his section 2255 motion by adding the *Voss* claim. The government argued that Leopard was procedurally barred from raising this claim as it was not raised on direct appeal. The court concludes, however, that with respect to the *Voss* issue Leopard has established a claim of ineffective assistance of counsel under the perfor-

mance-and-prejudice standard of *Strickland v. Washington,* 466 U.S. 668, 686–87, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and is therefore allowed to collaterally attack his sentence on Count II. *See Voss,* 956 F.2d at 1009 (plain error not to raise listed-chemical sentencing under U.S.S.G. § 2D1.1); *see also Glover,* 97 F.3d at 1348–50 (performance-and-prejudice standard of *Strickland* satisfied by counsel's failure to object to unsubstantiated D-methamphetamine sentencing).

In its response brief filed on August 4, 1999, the government raises a general claim of procedural default as to "some of defendant's contentions." With the exception of the *Voss* issue, the government has not specified the claims to which this procedural bar may apply. Thus, other than the *Apprendi* claim which the court declined to apply retro-

Consistent with this finding, the court sets this matter for resentencing as to Count II at noon on March 29, 2001.

*Conclusion*

Based on the foregoing reasons, Leopard's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 is denied with the exception of Leopard's sentence on Count II, which is vacated. The court directs that Leopard be returned to this district for re-sentencing as to Count II under the provisions of 18 U.S.C. § 3553(b) at noon on March 29, 2001.

---

actively, the court has elected to address the merits of Leopard's arguments rather than engage in a procedural bar analysis. Given the protracted history of this case, it appears to the court that "the interests of judicial efficiency, conservation of scarce judicial resources, and orderly and prompt administration of justice," *Hines v. United States,* 971 F.2d 506, 509, would be furthered by the court exercising its discretion and addressing

the merits of all claims fairly presented by Leopard. *See United States v. Allen,* 16 F.3d 377, 379 (10th Cir.1994)(court may elect to address the merits of a section 2255 motion where government has not raised procedural bar and the interests of judicial economy and efficiency, and the administration of justice, would not be advanced by raising the issue sua sponte).